[No. C052592. Third Dist. June 14, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN REYES, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts I and III of the Discussion.

## COUNSEL

Peter Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Mary Jo Graves, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Janis Shank McLean and Daniel B. Bernstein, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HULL, J.**—A jury convicted defendant John Reyes of possession of methamphetamine for sale (Health & Saf. Code, § 11378), transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a)), possession of marijuana while driving a motor vehicle (Veh. Code, § 23222, subd. (b)) and driving on a suspended license (Veh. Code, § 14601.1, subd. (a)). The trial court placed defendant on probation for five years.

On appeal, defendant contends that (1) evidence relating to domestic violence should have been excluded or admitted only for limited purposes, (2) three Judicial Council of California Criminal Jury Instructions (2006–2007) (CALCRIM) misstate the law, and (3) the judgment must be corrected to reflect the authorized amount of one fine. None of these claims has merit, and we therefore affirm the judgment.

### FACTS AND PROCEEDINGS

Defendant borrowed a car from a friend at 8:00 p.m. At approximately 1:00 a.m., a police officer saw the car make an unsafe turn. As the officer followed the car, he ran a vehicle check and learned that the registration had expired. He stopped the car.

Defendant, who was the driver and sole occupant of the car, had a suspended driver's license. The officer called a towing company to impound the car, and he searched the vehicle. The officer saw a glass smoking pipe in plain view between the front passenger seat and the center console. A baggie underneath the pipe contained methamphetamine. On the front passenger's seat, underneath a white plastic bag containing groceries, was a baggie of marijuana and a bindle of marijuana. A second pipe was found in a gym bag behind the driver's seat.

Defendant denied that the drugs were his but told the officer that he "had a problem using marijuana and dope." He said he had borrowed the car from a friend but also said "that since he was the only occupant in the vehicle, that he guessed he had to take responsibility for it."

The methamphetamine had a net weight of nearly 27 grams and a street value of between $580 and $780. A narcotics expert opined that the methamphetamine was possessed for sale. He also testified that methamphetamine dealers or users would not have left their drugs for someone else to find because they treat their drugs as a "prize possession."

Defendant was charged with possession of methamphetamine for sale, transportation of methamphetamine, possession of marijuana while driving a car, and driving on a suspended license.

Defendant's ex-wife, E.T., testified on his behalf. Although the couple was divorced, they still lived together and were romantically involved. She testified that defendant had been on his way to help her with a medical emergency when he was stopped by the police. E.T. had never mentioned this before, even to defense attorneys. She said that she had never seen defendant use or possess methamphetamine, and she added that defendant had no money to purchase drugs in this quantity.

During cross-examination, E.T. said she was not afraid of defendant. The prosecutor then questioned her about several incidents of domestic violence in which defendant assaulted E.T. E.T. reiterated that she was not afraid of defendant, commenting, "I know that [defendant] loves me and I love him, and there are stressful moments in time and everybody has to deal with those kinds of things."

As the prosecutor argued to the jury, the critical issue in this case was whether defendant knew the drugs were in the car. Defendant denied any knowledge of the drugs and asserted he had borrowed the car to help his wife. The prosecutor noted that defendant had the car for at least five hours before he was stopped. She questioned E.T.'s credibility, asserting that E.T. was both biased in favor of defendant and afraid of him. She pointed out that E.T. had offered a version of events she had never given before, and that her story did not jibe with other evidence. The prosecutor also emphasized defendant's comments to the arresting officer.

The jury convicted defendant on all counts, and the trial court placed defendant on probation for five years. This appeal followed.

DISCUSSION

I

*Evidence of Domestic Violence\**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II

*Challenge to CALCRIM Instructions*

Defendant contends that three of the given CALCRIM jury instructions misstate the law. We disagree.

---

*See footnote, *ante*, page 1491.

In reviewing instructions alleged to be erroneous, " 'we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.' [Citation.] In conducting this inquiry, we are mindful that ' "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." ' [Citations.]" (*People v. Frye* (1998) 18 Cal.4th 894, 957 [77 Cal.Rptr.2d 25, 959 P.2d 183].)

With this standard in mind, we turn to each of the challenged instructions.

### A.  *CALCRIM No. 103 (Reasonable Doubt)*

■ CALCRIM No. 103 is the instruction that explains reasonable doubt. Defendant's challenge focuses on one portion of the instruction, in which the jury was told: "The fact that a criminal charge has been filed against the defendant is not evidence that the charge is true. You must not be biased against the defendant just because he has been arrested, charged with a crime or brought to trial."

Defendant notes that although this instruction warns the jury of three impermissible bases of prejudice (that he had been arrested, that he had been charged with a crime, and that he had been brought to trial), it mentions only one of these (that he had been charged with a crime) as something that cannot be considered as evidence. Defendant asserts that "[t]he most reasonable interpretation for the average juror is that there must be a reason for the difference: that the jury could consider as evidence that [defendant] had been arrested, and had been brought to trial."

■ We agree with the People that this interpretation "defies common sense." A juror hearing this instruction could not reasonably conclude that although the juror could not be biased against defendant because he had been arrested or brought to trial, she could nonetheless consider those facts as evidence of guilt. Defendant's view is not only implausible, but it ignores other instructions that were given, including CALCRIM No. 104, which informed the jury that it "must use only the evidence that was presented in this courtroom. Evidence is the sworn testimony of witnesses, the exhibits admitted into evidence, and anything else I told you to consider as evidence." The court did not at any time instruct the jury that it could consider the fact of defendant's arrest or trial as evidence of his guilt; defendant's suggestion to the contrary is unsupported by the record.

■ In short, CALCRIM No. 103 did not misstate the law, and we reject defendant's claim of error.

B.  *CALCRIM No. 302 (Evaluating Conflicting Evidence)*

Defendant contends that the court's instruction under CALCRIM No. 302 conveyed the erroneous impression that a jury may consider the number of witnesses who testified for each side as a factor in determining which version of events to credit. We find that the challenged instruction accurately states the law.

■  CALCRIM No. 302 provides: "If you determine there is a conflict in the evidence, you must decide what evidence, if any, to believe. Do not simply count the number of witnesses who agree or disagree on a point and accept the testimony of the greater number of witnesses. [¶] On the other hand, do not disregard the testimony of the greater number of witnesses, or any witness, without a reason or because of prejudice or a desire to favor one side or the other. [¶] What is important is whether the testimony or any other evidence convinces you, not just the number of witnesses who testify about a certain point."

Defendant notes that the CALJIC instruction on weighing conflicting testimony, CALJIC No. 2.22, was approved by the Supreme Court in *People v. Rincon-Pineda* (1975) 14 Cal.3d 864, 884 [123 Cal.Rptr. 119, 538 P.2d 247]. He asserts that CALCRIM No. 302 differs in one critical respect from this approved instruction by implying that "the simple number of witnesses is one factor (although not necessarily the determinative factor) in deciding which of two conflicting versions of the facts to credit." This implication, according to defendant, does not reflect California law. We disagree.

■  CALJIC No. 2.22 offers precisely the same guidance for weighing conflicting testimony by providing: "You are not required to decide any issue of fact in accordance with the testimony of a number of witnesses, which does not convince you, as against the testimony of a lesser number or other evidence, which you may find more convincing. You may not disregard the testimony of the greater number of witnesses merely from caprice, whim or prejudice, or from a desire to favor one side against the other. You must not decide an issue by the simple process of counting the number of witnesses [who have testified on the opposing sides]. The final test is not in the [relative] number of witnesses, but in the convincing force of the evidence."

■  Both instructions (CALCRIM No. 302 and CALJIC No. 2.22) emphasize that it is the convincing force of testimony, not the number of witnesses that is of critical importance. Neither instruction, however, suggests that the number of witnesses cannot be taken into account. Rather, they both instruct that the number of witnesses, *by itself*, is not the determining factor.

Defendant's claim is again without merit.

### C.  CALCRIM No. 359 (Corpus Delicti)

Defendant contends that CALCRIM No. 359 does not accurately explain the law on corpus delicti. We disagree.

■  The trial court's instruction on CALCRIM No. 359 provided: "The defendant may not be convicted of any crime based on his out-of-court statement alone. *Unless you conclude that other evidence shows someone committed the charged crime, you may not rely on any out-of-court statement by the defendant to convict him.* [¶] The other evidence may be slight and need only be enough to support a reasonable inference that someone's criminal conduct caused an injury, loss, or harm. The other evidence did not have to prove beyond a reasonable doubt that the charged crime actually was committed. The identity of the person who committed the crime may be proved by the defendant's statement alone. [¶] You may not convict the defendant unless the people have proved his guilt beyond a reasonable doubt." (Italics added.)

Defendant contends that the italicized sentence is an incorrect statement of law and that the instruction should instead have explained that the jury may not consider an out-of-court statement "unless there is independent (although slight) evidence on each element of the charged crime." Defendant posits a distinction without a difference.

■  Under CALCRIM No. 359, a jury may not consider a defendant's out-of-court statement unless the jury concludes that "other evidence shows that the charged crime [or a lesser included offense] was committed." A crime consists of specified elements; if evidence of any of the requisite elements is lacking, a defendant has not committed a crime. There is no difference between an instruction that cautions that there must be evidence on each element of the charged crime and one that cautions that there must be evidence that a crime was committed. These phrases describe the same set of requirements. There was no error.

### III

### Amount of Fine*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 1491.

## DISPOSITION

The judgment is affirmed.

Raye, Acting P. J., and Robie, J., concurred.

A petition for a rehearing was denied June 22, 2007, and appellant's petition for review by the Supreme Court was denied September 12, 2007, S154279.